


IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BMC RESOURCES, INC., | § | |
| Plaintiff, | § | |
| v. | § | 3:03-CV-1927-M |
| PAYMENTECH, L.P., | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

This Court has conducted an independent review of the file and the pleadings in this case, as well as the Findings and Recommendation (the "Findings") of United States Magistrate Judge Jeff Kaplan, filed on February 9, 2006, to which the Plaintiff has asserted objections. The Court accepts the Findings and Recommendation of the United States Magistrate Judge.

FACTUAL BACKGROUND

As stated in the Findings, the factual background of this case is as follows. BMC is the assignee of two patents covering the method and apparatus for processing debit transactions without a personal identification number ("PIN"). U.S. Patent No. 5,715,298 (Feb. 3, 1998) ("the '298 Patent") and U.S. Patent No. 5,870,456 (Feb. 9, 1999) ("the '456 Patent"). Simply stated, the patented invention, also known as the Telepay[1] system, provides an interface between a standard touch-tone telephone and a debit card network such that real-time bill payment

[1]BMC was formerly known as Telepay.

transactions may be effected by using a telephone keypad. The invention includes an interactive voice response unit ("IVR") that prompts the caller to enter an access code, account number, debit card number, and payment amount. Using the invention, the caller may initiate a bill payment transaction, obtain information regarding authorization of the transaction, and inquire about previously processed transactions.

Paymentech is in the business of assisting clients, typically retail merchants, with processing payment transactions. In 2002, Paymentech began marketing PINless debit bill payment services ("DBP") to its existing and potential customers. The success of that marketing campaign enabled Paymentech to expand its operations to process DBP transactions. When Paymentech processes a DBP transaction, the following sequence occurs:

1. the customer calls the merchant to pay a bill using an IVR;
2. the merchant collects payment information from the customer and sends it to Paymentech;
3. Paymentech routes the information to a participating debit network;
4. the debit network forwards the information to an affiliated financial institution;
5. the financial institution authorizes or declines the transaction and, if authorized, charges the customer's account according to the payment information collected by the merchant;
6. information regarding the status of the transaction moves from the financial institution to the debit network and then, through Paymentech, to the merchant, who informs the customer of the status of the transaction.

Upon learning that Paymentech was offering DBP processing services to its clients, BMC demanded that Paymentech enter into a license agreement to use the Telepay system. Paymentech refused and, as a preemptive measure, filed suit in federal district court seeking a declaration of non-infringement with respect to the '456 Patent, the '298 Patent, and U.S. Patent No. 5,652,786 ("the '786 Patent"). After the parties were realigned, BMC, as plaintiff, amended its complaint to allege direct infringement and infringement by inducement of both the '456 Patent and the '298 Patent. The Court dismissed Paymentech's claim with respect to the '786 Patent for lack of subject matter jurisdiction on May 28, 2004.[2]

On February 9, 2006, Judge Kaplan entered his Findings, recommending that the Court grant Paymentech's Motion for Summary Judgment and deny BMC's Motion for Partial Summary Judgment. BMC filed Objections on Feburary 28, 2006, Paymentech filed its Response on March 13, 2006, and BMC filed its Reply on March 28, 2006. Both parties filed supplemental briefs to address the Federal Circuit's recent decision in *On Demand Machine Corp. v. Ingram Indus., Inc.*, 442 F.3d 1331 (Fed. Cir. 2006).

STANDARD OF REVIEW

Summary judgment is warranted when the facts and law, as reflected in the pleadings, affidavits, and other summary judgment evidence, show that no reasonable trier of fact could find for the nonmoving party as to any material fact. *Pourgholam v. Advanced Telemktg. Corp.*, No.

[2]Paymentech's claim was dismissed for lack of subject matter jurisdiction because Paymentech could not prove it had an "objectively reasonable apprehension" of being sued for infringement of the '786 Patent. *BMC Res., Inc. v. Paymentech, L.P.*, 2004 U.S. Dist. LEXIS 22758, No. 3-03-CV-1927-M, 2004 WL 981079 (N.D. Tex. May 5, 2004), *rec. adopted*, 2004 U.S. Dist. LEXIS 22755, 2004 WL 1196119 (N.D. Tex. May 28, 2004).

3:01-CV-2764-H, 2004 U.S. Dist. LEXIS 10659, at *2-3 (N.D. Tex. June 9, 2004) (citing Fed. R. Civ. P. 56; *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986)). "The moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but is not required to negate elements of the nonmoving party's case." *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998) (citing *Celotex*, 477 U.S. at 322-25). Once the movant carries its initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate. *Fields v. City of S. Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991).

The nonmovant is then required to go beyond the pleadings and designate specific facts that prove the existence of a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). That party may not rest on conclusory allegations or denials in its pleadings that are unsupported by specific facts. Fed. R. Civ. P. 56(e). The court must review all evidence in the record, giving credence to evidence favoring the nonmovant as well as "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses" and disregarding the evidence favorable to the nonmovant that the jury is not required to believe. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 152 (2000). Further, "the court must draw all justifiable inferences in favor of the nonmovant." *Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 338 (5th Cir. 2005).

In determining whether genuine issues of material fact exist, "factual controversies are construed in the light most favorable to the nonmovant, but only if both parties have introduced

evidence showing that a controversy exists." *Lynch Props.*, 140 F.3d at 625. "If the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Friou v. Phillips Petroleum Co.*, 948 F.2d 972, 974 (5th Cir. 1991). However, in the absence of proof, a court will not conclude that the nonmoving party could prove the required facts. *Lynch Props.*, 140 F.3d at 625.

## ANALYSIS

*1. Direct Infringement of the '298 Patent and the '456 Patent*

"It is well established that a patent for a method or process is not infringed unless all steps or stages of the claimed process are utilized." *NTP, Inc. v. Research In Motion, Ltd.*, 418 F.3d 1282, 1318 (Fed. Cir. 2005) (citing *Roberts Dairy Co. v. United States*, 530 F.2d 1342, 1354 (Ct. Cl. 1976)). Typically, "infringement of a method claim occurs only when the accused infringer carries out every step as set forth in the claim." *See Faroudja Labs., Inc. v. Dwin Elecs., Inc.*, No. 97-20010-SW, 1999 U.S. Dist. LEXIS 22987, at *10 (N.D. Cal. Feb. 24, 1999) (citing *Gen. Foods v. Studiengesellschaft Kohle mbH*, 972 F.2d 1272, 1274-75 (Fed. Cir. 1992)). However, "[i]nfringement of a patented process or method cannot be avoided by having another perform one step of the process or method." *Shields v. Halliburton Co.*, 493 F. Supp. 1376, 1389 (W.D. La. 1980) (citing *Metal Film Co. v. Metlon Corp.*, 316 F. Supp. 96 (S.D.N.Y. 1970)); *see also E.I. DuPont de Nemours & Co. v. Monsanto Co.*, 903 F. Supp. 680, 745 (D. Del. 1995). "[S]everal district courts have found that a party directly infringes a method or process patent where the various steps in the patent are performed by distinct entities." *Marley Mouldings Ltd. v. Mikron Indus., Inc.*, 66 U.S.P.Q.2d (BNA) 1701, 2003 U.S. Dist. LEXIS 7211, at *7-8 (N.D.

Ill. Apr. 29, 2003) (collecting cases) *rev'd on other grounds by* 417 F.3d 1356 (Fed. Cir. 2005). In a recent case, without analysis, the Federal Circuit generally approved a jury instruction based on joint infringement of a process patent. *See On Demand*, 442 F.3d at 1344-45.

After showing that multiple entities carry out every step as set forth in the claim of a process patent, to show that a specific entity is liable for direct infringement, a party must show that the specific entity is "connected" to the other entities performing the other steps. *See Marley*, 2003 U.S. Dist. LEXIS 7211, at *7-8; *Hill v. Amazon.com, Inc.*, 2:02-CV-186, 2006 U.S. Dist. LEXIS 3389, at *15 (E.D. Tex. Jan. 19, 2006) (Ward, J.). "Under such facts, [the specific entity], . . . through its connection with the entity performing only part of the process, is in actuality performing the combination of each and every step of the claimed method." *Marley*, 2003 U.S. Dist. LEXIS 7211, at *9.

District courts vary, however, as to what kind of "connection" between the entities they require a party to prove to show direct infringement.[3] In *Faroudja*, the court stated that "some

---

[3]BMC argues that the Federal Circuit's recent decision in *On Demand* addresses this point of law. In *On Demand*, the Federal Circuit reversed a jury verdict of infringement of a process patent. 442 F.3d at 1333-34. The *On Demand* panel considered, *inter alia*, whether the actions of two entities, together, jointly infringed the process patent. *Id.* at 1344-45. The panel noted that the combined actions of the two entities did not infringe the patent; as a result, the panel did not reach the question of what kind of "connection" between the entities was necessary to sustain a jury verdict of joint infringement. *See id.*; *accord NTP*, 418 F.3d at 1318.

However, the panel quoted the district court's jury instruction, which stated that "[w]here the infringement [of a process patent] is the result of the participation and combined actions of one or more persons or entities, they are joint infringers and are jointly liable for the infringement." *On Demand*, 442 F.3d at 1344-45. Without analysis, the panel stated that it "discern[ed] no flaw in this instruction as a statement of law." *Id.* BMC argues that, by this statement, the panel adopted a "participation and combined action" standard as the type of "connection" a plaintiff must show to prove joint infringement. The Court disagrees. As noted above, the Federal Circuit did not rely on the relationship between the entities in its holding; rather, the panel held that, whatever the connection between the entities, their joint actions did not infringe the patent. *See id.* Because the district court's definition of "connection" was not

connection" must exist between the entities, but also suggested that the entities must work "in concert". 1999 U.S. Dist. LEXIS 22987 at *15, *17. In *Marley*, the court refused to find non-infringement as a matter of law, because it found a material issue of fact as to whether the purported infringing entity had "control" over another entity, but suggested that finding only "some kind of connection" was needed. 2003 U.S. Dist. LEXIS 7211, *9-10. In *Applied Interact, LLC v. Vermont Teddy Bear Co.*, the court refused to find non-infringement as a matter of law because the steps of the claim were performed by "connected entities" and "the patent contemplate[d] action by at least two actors", and the purported infringing entity instructed another entity on how to perform some of the steps of the method patent. 04 Civ. 8713 (HB), 2005 U.S. Dist. LEXIS 19070, (S.D.N.Y. Sept. 6, 2005). The court in *Hill* suggests that, to prove a "connection", a party may show agency, a contractual relationship, or that the purported infringer directed or worked in concert with another entity. *See Hill*, 2006 U.S. Dist. LEXIS 3389 at *17-18.

In his Findings, Judge Kaplan recognized that "[b]oth parties agree that at least part of [the claimed process] is performed by . . . debit networks and participating financial institutions." Findings at 9. The court noted three steps performed by these entities: (1) determining whether sufficient funds exist in the PINless credit or debit card account, (2) charging the payment

---

relied on in the panel's conclusion, the Court refuses to read the panel's dictum that it found "no flaw" as a wholesale adoption of the district court's jury instruction.

Because neither party points to any Federal Circuit or Supreme Court authority that addresses this point of law, the Court will consider apposite district court authority. *Accord Marley*, 2003 U.S. Dist. LEXIS 7211, at *6 ("Neither the Supreme Court nor the Federal Court of Appeals has addressed the issue of whether a party who does not perform every step of a method claim may be liable for direct infringement of a method claim where separate entities perform separate steps of a method claim.")

amount against the account, and (3) adding the payment amount to the merchant's account. *Id.* at 9-10. In BMC's brief supporting summary judgment, it recognized that "the financial institution will, during the call, charge the payment against the account of the debit card holder."[4] Pl. Br. at 19; *accord* Def. Br. at 11 ("There is no dispute that the financial institution that issued the payment card used by the consumer is the entity that charges against, or debits, the consumer's account.").

Magistrate Judge Kaplan next determined the kind of "connection" BMC needed to show between Paymentech and the other entities performing steps of the process patents. It stated that "courts appear to require a close relationship or connection between the infringer and the other entity such that the party accused of infringement directs or controls the actions of the other party." Findings at 7-8 (citing *Marley*, 2003 U.S. Dist. LEXIS 7211, at *9; *Cordis Corp. v. Medtronic AVE Inc.*, 194 F. Supp. 2d 323, 349-50 (D. Del. 2002), *rev'd on other grounds by* 339 F.3d 1352 (Fed. Cir. 2003); *Mobil Oil Corp. v. Filtrol Corp.*, 501 F.2d 282, 291-92 (9th Cir. 1974)). Although Judge Kaplan noted evidence creating a genuine issue of material fact as to whether Paymentech directs or controls the steps performed by its retail customers, he found that the record was devoid of evidence that showed that Paymentech directs or controls the alleged infringing activities of the debit networks and the financial institutions. Findings at 9-11.[5]

---

[4]In its Objections, BMC states that "The debit networks and affiliated financial institutions determine if the transaction is authorized or declined and perform the adding and charging steps." Despite this assertion, the associated citations to the appendix do not support a finding that the debit networks charge the payment against the account of the debit card holder. *See* Pl. App. at 427-28, 475-76, 1134, 1227.

[5]"To the contrary, the evidence suggests that the debit networks follow their own rules and regulations for processing DBP transactions, and that Paymentech can be fined if a merchant fails to comply with those regulations." Findings at 11.

BMC raises two issues in its Objections concerning these findings. First, BMC argues that it has produced evidence that Paymentech directs and controls the debit networks/financial institutions. Second, BMC claims that it should not have to show that Paymentech "directs and controls" the debit networks/financial institutions; rather, it should only have to show that Paymentech had "some connection" with the debit networks. The Court will consider each argument.

As a preliminary matter, the Court notes that BMC appears to have conflated many of its arguments concerning the debit networks and the financial institutions. At various points in its Objections, BMC refers to the "debit networks/financial institutions" and the "debit networks/affiliated financial institutions". Other assertions in its Summary Judgment Brief and Objections imply that the debit networks and financial institutions are two separate entities. *See* Pl. Objs. at 4 ("The selected debit network communicates with the affiliated financial institution who issued the network debit card."); Pl. Br. at 11-12 ("The networks forward information to an affiliated financial institution.") Although BMC asserts that the debit networks and the financial institutions are "affiliated", and that the debit networks "communicate" with the financial institutions, BMC has not provided evidence that the Court should consider the debit networks and financial institutions as a unitary entity.

Both sides stated that the financial institutions perform the step of "charging the payment amount against the account" step. Pl. Br. at 19 (citing Pl. App. at 1578); Def. Br. at 11. The debit networks, in concert with the financial institutions, perform the step of "determining whether sufficient funds exist in the PIN-less credit or debit card account". Pl. Br. at 19; Def. Br. at 11. As a result, the Court must consider whether Paymentech showed evidence of the requisite

"connection" for the debit networks and the financial institutions.

*a. Evidentiary Support Under the "Direct or Control" Standard*

BMC argues that it has shown sufficient evidence to create a genuine issue of material fact as to whether it directs or controls the activities of the debit networks/financial institutions.

BMC has provided evidence of some relationship between Paymentech and the debit networks, including: (1) Paymentech petitioned the debit networks for authorization for the merchants to use the networks, and "basically deal[t] with the debit network relationship" for the merchants, *See* Pl. App. at 389, 448-50, 766-67, 917, 948, 957-60, 979-82, 1056, 1135, 1207, 1646-48, 1840, 1872, 2299; (2) Paymentech ensured that the merchants complied with the regulations of the debit networks[6], Pl. App. at 446, 449-50, 462, 1839; (3) Paymentech routed the transactions to the appropriate debit networks, Pl. App. at 461-62, 1402; (4) Paymentech had a contractual relationship with at least one debit network, Pl. App. at 462; (5) Paymentech established a "direct connection" with specific debit networks, Pl. App. at 871-73, 1227, 1543; (6) Paymentech would "reformat" transaction instructions to communicate with the debit networks, Pl. App. at 681-82, 715.

BMC has provided little evidence of any relationship between Paymentech and any financial institutions. There are references to bank identification numbers, or BINs, but no evidence explaining how reference to these numbers shows any relationship between Paymentech

[6]Among the debit networks mentioned were Star, NYCE, and Pulse. Pl. App. at 446.

and the financial institutions.[7] Paymentech promotional materials state that "Paymentech forwards the [request to authorize a debit card transaction] to the customer's bank via the NYCE, Pulse© or Star© debit networks. If approved, the customer's bank account is debited for the amount of the bill payment." Pl. App. at 1227. BMC provided evidence that Paymentech sends some indicators intended for financial institutions[8] along with any transactions sent to the debit networks. Pl. App. at 476. BMC argues that Paymentech has a contractual relationship with the debit networks/financial institutions, but only provides evidence of a contractual relationship with the debit networks, not with the financial institutions.

The Court agrees with the Findings. BMC has not shown adequate evidence that Paymentech directed or controlled the debit networks. In its Objections, BMC cites to evidence that shows that Paymentech transmits to the debit networks the debit card number, the "name" (presumably of the account holder), the amount of the purchase, what bill was being paid, a field that states that "there's going to be no PIN here", and other "data characteristics". Pl. App. at 889. BMC does not argue that such transmissions control the debit networks. It argues that such transmissions direct the debit networks, citing *Vermont Teddy Bear*. The Court disagrees. In *Vermont Teddy Bear*, the Court found that if the other entities were to perform steps of the

---

[7]In fact, BMC's Objections suggest that the BINs are evidence of a "connection" between Paymentech and the debit networks, not the financial institutions. *See* Pl. Objs. at 23 ("Paymentech receives BIN (Bank Identification Number) files from the debit networks that are used by Paymentech and its merchant to validate debit card numbers, and works with the debit networks to maintain accurate BIN file records.")

[8]In his deposition, Larry DePalma, a Former Paymentech Manager for its ACH product line, stated that Paymentech included an "indicator" in the message it sends to the debit networks that goes out to the financial institution. Pl. App. at 476. This indicator shows "how [the message] was originated". Pl. App. at 476.

process patent, "they must do so according to the instructions [provided] on the [purported infringer's] website".[9] *Vt. Teddy Bear*, 2005 U.S. Dist. LEXIS 19070, at *16-17. Unlike in *Vermont Teddy Bear*, here, BMC has not shown any evidence of instructions or directions by Paymentech; instead, BMC has only shown evidence of data provided to the debit networks. The Court cannot assume that Paymentech also provides instructions or directions on how to use such data. As a result, the Court finds that BMC has not presented sufficient evidence to create a genuine issue of material fact as to whether it directs or controls the activities of the debit networks. *See Lynch Props.*, 140 F.3d at 625 ("[I]n the absence of proof, a court will not conclude that the nonmoving party could prove the required facts.").

Even if BMC had presented sufficient evidence that Paymentech directed or controlled the debit networks, BMC did not present any evidence that any entity[10] directed or controlled the financial institutions. Again, the mere fact that Paymentech provides data to the financial institutions does not create an issue of fact as to whether Paymentech sent instructions or directions to the financial institutions. The Court finds that BMC has not shown sufficient evidence to create a genuine issue of material fact as to whether it directs or controls the activities of the financial networks. *See Lynch Props.*, 140 F.3d at 625.

---

[9]"For example, the factory tour coupon appears on a web page together with the instructions to 'Print this coupon and bring it with you for a free tour of our factory!'" *Vt. Teddy Bear*, 2005 U.S. Dist. LEXIS 19070, at *17.

[10]At this juncture, the Court need not consider whether BMC must show that the financial institutions were directed or controlled by Paymentech, or whether it would be sufficient to show that the financial institutions were directed or controlled by an entity directed or controlled by Paymentech.

*b. "Direct or Control" Is the Proper Legal Standard*

BMC claims that the "direct or control" standard is underinclusive. BMC first suggests that requiring evidence of direction or control is particularly inappropriate when (1) the patent clearly contemplates that the method will be performed by multiple actors and the relationship between these entities is the one described in the patent, and (2) it is unlikely in terms of the realities of the business situation that any one person or company would itself physically perform all the steps of the claim. Pl. Objs. at 8-9 (citing *Pay Child Support Online Inc. v. ACS State & Local Solutions, Inc.*, 02-1321, 2004 U.S. Dist. LEXIS 6011, at *25-26 (D. Minn. Apr. 5, 2004); *Free Standing Stuffer, Inc. v. Holly Dev. Co.*, 72 C 1070, 1974 U.S. Dist. LEXIS 11420, at *35 (N.D. Ill. Dec. 24, 1974)). BMC argues that the Court need only find "some connection" between the entities; while proof or direction or control is sufficient, such evidence is not necessary. In support of this argument, BMC cites *Hill*, *Pay Child Support Online*, *Cordis*, *Faroudja*, *Marley*, and *Classen Immunotherapies, Inc. v. King Pharmaceuticals, Inc.*, 403 F. Supp. 2d 451 (D. Md. 2005). Specifically, BMC states that "some connection" may be found if it establishes that: (1) the entities engaged in the same relationship described in the patent (citing *Hill* and *Pay Child Support Online*); (2) the entities work together, jointly, or in concert to perform the patented method steps (citing *Hill*, *Classen*, *Cordis*, and *Faroudja*); (3) a contractual relationship exists between the parties (citing *Hill*, *Classen*, and *Marley*); or (4) the entities interacted during the ordinary course of a commercial business relationship (citing *Cordis* and *Faroudja*).

Having reviewed the Findings and the authorities cited by Plaintiff, the Court agrees with Judge Kaplan and finds that Plaintiff must prove that the party accused of infringement directs or controls the actions of the other entity or entities performing the steps of the process patent.

Even if the Court used BMC's looser standard, however, Plaintiff cannot prevail, because it has not presented sufficient evidence of a connection between Paymentech and the financial institutions. BMC only provides evidence that Paymentech sends some sort of information to the financial institutions through the debit networks. BMC has not cited to, nor can the Court find, any language in the '298 patent providing that the financial institutions should "charg[e] the entered payment amount against the account associated with the entered payment number". Second, BMC has not presented any evidence that shows that Paymentech and the financial institutions work together, jointly or in concert, to perform the charging step. Without evidence, the Court cannot assume that whenever Paymentech provides "information" to the financial institutions through the debit networks, the financial institutions, in response to such information, are acting in concert with Paymentech to charge the accounts. *See Lynch Props.*, 140 F.3d at 625. Third, BMC has not provided any evidence of a contractual relationship between Paymentech and the financial institutions. Fourth, BMC has not provided evidence of a "commercial business relationship" between Paymentech and the financial institutions. Even under the approach BMC proposes, it failed to prove the existence of a genuine issue of material fact as to whether there was a sufficient connection between Paymentech and the financial institutions.

## CONCLUSION

For the reasons above, the Court accepts the Findings and Recommendation of the United States Magistrate Judge. The Court **GRANTS** Paymentech's Motion for Summary Judgment, and **DENIES** BMC's Motion for Summary Judgment.

**SO ORDERED.**

May 24, 2006.

BARBARA M.G. LYNN
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF TEXAS